THE STATE OF OHIO, APPELLEE, *v.* EVANS, APPELLANT.

[Cite as *State v. Evans* (1992), 63 Ohio St.3d 231.]

(No. 90–1452—Submitted November 20, 1991—
Opinion announced March 11, 1992.)

232

*Stephanie Tubbs Jones,* Prosecuting Attorney, and *Jack H. Hudson,* for appellee.

*Randall M. Dana,* Public Defender, *Joann Bour–Stokes* and *Jane P. Perry,* for appellant.

*Per Curiam.*

## I

Appellant alleges in his first proposition of law that the prosecution engaged in misconduct in the guilt and mitigation phases of the trial.

## A

Appellant challenges the following comments by the prosecutor during his closing argument in the mitigation phase:

"MR. HUDSON: * * * What do you think life imprisonment means? Twelve years later he's out. And inside of three months, he had killed two more people. And they come here and say give us mercy. Life imprisonment?

"Mr. Saferin stands up here and talks to you about years and totals. I could tell you three or four different ways that that's not a positive thing.

"To start with, these attorneys will never abdicate. It's too soon after conviction to pursue his appeal, number one. Judge—

"MR. CARSON: Objection.

"THE COURT: Objection sustained.

"MR. HUDSON: Life imprisonment.

"Number two, when they talk about pardon, no, they don't mention that. Commutation.

"MR. CARSON: Objection.

"THE COURT: Objection sustained. Ladies and gentlemen of the jury, your consideration is going to be on the facts in this case and the instructions of law that I give you that apply to the facts in this case.

"You may proceed.

"MR. HUDSON: Life imprisonment. Escape. All of these are possible.

"MR. CARSON: Objection.

"THE COURT: Objection sustained.

"MR. HUDSON: In any event, he told you he was sentenced to life imprisonment 12 years ago. And he was out for two or three months."

Appellee points out that the prosecutor's comments were in response to the following comments of appellant's counsel:

"MR. SAFERIN: * * * Should this jury choose to put Mr. Evans in jail for 20 to life, he will not see the parole board for the first time until the year 2010 * * * [and] [h]e will be 52 years old at that time. And that will be the first time that the parole board will ever take a look at his particular position.

"If you were to choose to give him 30 to life, he wouldn't see the parole board until 2020, and he will then be 62 years old. To give you an idea on that, you could start collecting Social Security at that age. He would be in jail 33 years or 23 years without any possibility of going to the parole board and getting out soon. That's the law, and I think that's important that that is so. * * * "

In *State v. Bedford* (1988), 39 Ohio St.3d 122, 125, 529 N.E.2d 913, 917, the prosecutor, in his closing argument, stated that if the defendant was sentenced to anything less than death there would be no guarantee he would serve the entire sentence because the statute could be changed.

Although the state in the instant case did not use the same words, the same meaning emerged—if the jury would sentence the defendant to anything other than the death penalty, they should be concerned that the defendant would not serve his entire sentence, and could be back on the streets. As we held in *Bedford*, "[w]e expressly disapprove of arguing to a jury that a statutory penalty could be amended. However, reviewing the closing argument as a whole along with the prosecutor's observation and the correct jury instruc-

tions, we determine the comment is not grounds for reversing * * * [the] sentence. * * * " *Id.*, 39 Ohio St.3d at 125, 529 N.E.2d at 917.

Though it was improper for the prosecutor to mention the possibility of escape, commutation, and pardon, the trial judge's admonition to the jury was sufficient to correct any prejudice induced by the prosecutor's inappropriate response to the argument of the defense. As we stated in *Bedford*, "[u]ndeniably, the conduct of the prosecutor was ill-advised. The issue, however, is whether the conduct requires that the death sentence be vacated. We conclude that it does not." *Id.*, 39 Ohio St.3d at 125, 529 N.E.2d at 917.

In light of the correct jury instruction and admonition given by the court, the death sentence need not be vacated because of the prosecutor's comments.

### B

Appellant next claims error by the prosecutor's closing remark during the guilt phase regarding the impact of the death of Joann Richards on her son because he watched as his mother was being stabbed:

"MR. HUDSON: * * * the poignant aspect, when you stop to think about it, a young man watching his mother murdered with 22 stab wounds and crawling under the bed and coming out when the police officers found him saying, 'Don't shoot. I'm only a kid. I'm only a kid.'"

Appellant argues that this remark by the prosecutor constitutes a victim-impact statement prohibited by *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440. Appellant's argument fails because the remark of the prosecutor is only a recitation of the facts brought out during the trial, and thus not a victim-impact statement.

We also note that even if we were to hold that this remark constituted a victim-impact statement, such a statement is no longer precluded *per se*. *Booth v. Maryland* has been overruled in *Payne v. Tennessee* (1991), 501 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720, a case in which the Supreme Court permitted the use of victim-impact evidence in some situations. In *Payne*, where a mother and daughter were killed, the court held that it was permissible to allow testimony by relatives as to the effect of the crimes on the mother's surviving son. Prosecutorial argument on the family's pain was also found to be proper.

### C

Next, appellant claims error by the prosecutor's closing remarks at mitigation concerning appellant's prior conviction for murder:

"MR. HUDSON: * * * Three lives gone. Who knows how many lives ruined, destroyed. Does he deserve the maximum penalty? Look at these photos. You won't see Angus Barry here. He is young man of 17 years old and—

"MR. CARSON: Objection.

"THE COURT: Sustained.

"MR. HUDSON: —dead.

"MR. CARSON: May we approach the bench?

"THE COURT: No.

"MR. HUDSON: He killed before. Angus Barry—

"MR. CARSON: Objection.

"THE COURT: Sustained."

Angus Barry was the victim in appellant's prior murder conviction. As the court below stated: "Any prejudice to the appellant was slight due to the court's instructions to the jury that closing arguments are not evidence * * *. Prejudice was minimized due to the fact that the jury had already received evidence of the appellant's prior murder conviction and the name of the victim in that previous case." In addition, because the prior murder conviction is an aggravating circumstance, the prosecutor is permitted to discuss the elements of it, including the name of the victim.

## D

Appellant also argues that the prosecutor's reference to "justice" deprived him of a fair trial.

During the guilt phase, the prosecutor stated: "Take the witnesses— obviously you will have to weigh their testimony extremely carefully. You have to come to a conclusion that results in justice because that is the purpose of a jury, justice.

"There are two people dead and another so severely wounded, 21 stab wounds. Justice, justice in our community.

"I call upon you to be true to your oath to well and truly try this case. Don't let any smoke get in your eyes. Think of the evidence you heard from that witness stand and come back with a verdict that is appropriate in this case, and that is guilty of every count, guilty on every specification, guilty of the carnage that he committed on this family."

In the penalty phase, the prosecutor again called for justice:

"So, now penalize him. Penalize him to the maximum within your power. He has perpetrated the maximum crime. They asked for mercy. The State of Ohio and all the people in it ask for justice. I ask you to follow the law. The law is clear. You are highly intelligent people. Follow the law."

There is nothing inherently erroneous in calling for justice and, thus, the argument was proper. Additionally, because appellant failed to object, we would review any error under the stringent "plain error" standard. Crim.R. 52(B). There has been no showing that the outcome of this case clearly would have been different but for the closing argument of the prosecutor. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

"In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. * * *" *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402, 473 N.E.2d 768, 793. See, also, *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883.

Accordingly, this proposition is not well taken.

## II

Appellant argues in his second proposition of law that the trial court improperly instructed the jury as to accomplice testimony.

Michael Frazier, indicted together with appellant, testified for the state. The court gave the following instruction to the jury:

"Now, testimony of an accomplice.

"An accomplice is one who purposely and knowingly assists and joins another person in the commission of a crime. The testimony of a witness whom you find to be an accomplice should be considered together with all the other facts and circumstances in evidence and by applying the general rules of credibility of witnesses you will determine if his testimony is worthy of belief; whether Michael Frazier was an accomplice, and the weight that you give to his testimony are matters that you must determine.

"The testimony of a witness whom you find to be an accomplice should be considered the same as any other witness. However, no person, that is, the defendant, shall be found guilty of criminal charges only upon the testimony of an accomplice. The testimony must be supported by other credible, believable evidence."

Appellant correctly argues that the above instruction did not comply with the current instruction required by R.C. 2923.03(D). The new version of the statute, effective September 17, 1986, eliminated the need for corroboration of an accomplice's testimony, but required the court to instruct the jury about its

suspect credibility. See 141 Ohio Laws, Part II, 3296, 3299. Appellant asserts that the jury should have been instructed in accordance with the new version of the statute as follows:

"The testimony of an accomplice that is supported by other evidence does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution."

In view of appellant's failure to object to the jury instruction as required by Crim.R. 30(A), he cannot prevail unless he demonstrates that but for the error, "the outcome of the trial clearly would have been otherwise." *State v. Long, supra,* at paragraph two of the syllabus; *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. Here, the instruction made it impossible for the jury to find appellant guilty only from the testimony of the accomplice; therefore, it actually put a higher burden on the state than was necessary had the correct charge been given. The outcome of the trial would not have been otherwise.

Even had the accomplice not testified, it is clear that the result would not have been different. The testimony of Albert Richards and Speights clearly implicated appellant in the aggravated murders. Appellant has failed to show plain error, and his proposition is rejected.

### III

In his third proposition of law, appellant alleges that he is not death-eligible because the jury did not find him guilty of the felony-murder specification, even though it found him guilty of aggravated murder.

Appellant was found guilty of the aggravated murders of Joann Richards and Williams, including the aggravating circumstances of mass murder and prior murder. Appellant argues that these verdicts are inconsistent because, in regard to the felony-murder specifications, the jury found that appellant was not the principal offender and that he did not commit the murder with prior calculation and design.

We examined similar situations in *State v. Mapes* (1985), 19 Ohio St.3d 108, 19 OBR 318, 484 N.E.2d 140, and *State v. Perryman* (1976), 49 Ohio St.2d 14, 3 O.O.3d 8, 358 N.E.2d 1040, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156. In *Mapes,* we stated:

" 'Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrent-

ly acquitted of a specification indicting him for identical behavior, the general verdict is not invalid.

"* * * *

" 'The sentence was not based on an alleged inconsistency. The guilty verdict for count one reflects the jury's determination that appellant was guilty of the felony-murder. The determinations rendered as to the respective specifications, can not change that finding of guilty. * * * If more than one such specification is charged, a finding of guilty on only one specification is all that is required in order for the court to render the death sentence.' " *Mapes, supra,* 19 Ohio St.3d at 113, 19 OBR at 322, 484 N.E.2d at 145, quoting *Perryman, supra,* at paragraph three of the syllabus, and 49 Ohio St.2d at 26, 3 O.O.3d at 15, 358 N.E.2d at 1048.

Appellant attempts to distinguish this case from *Mapes* by arguing that in *Mapes,* evidence was adduced that Mapes was the triggerman. The result in *Mapes,* however, does not hinge upon a determination of the degree of involvement of the appellant in the murder. As in *Mapes,* we note that it is consistent for a jury to find an individual guilty of the underlying aggravated murder as an accomplice, but not find that he was a principal offender or that he committed the murder with prior calculation and design. *Mapes, supra,* 19 Ohio St.3d at 113, 19 OBR at 322, 484 N.E.2d at 145.

Additionally, we note that the finding of guilt on the prior-murder specification is sufficient to warrant the death penalty in this situation even in the absence of a finding of the jury that appellant was guilty of the felony-murder specification. Although appellant's argument may have some merit with respect to the jury's finding that he was guilty of the mass-murder specification, we need not determine whether that specification should stand in view of the finding of guilt on the prior-murder specification. Accordingly, this proposition is not well taken.

## IV

Appellant claims in his fourth proposition of law that the prior-murder specification is invalid because he was sixteen at the time he committed the prior murder, and also because he was incompetent to stand trial.

In his prior murder conviction, appellant was bound over as an adult and subsequently pled guilty to murder. He argues that because he was not an adult at the time of the murder, it should not be used as a specification of prior-murder. He does not provide any logic or case law supporting this argument, and the relevant death penalty specification statute, R.C. 2929.-04(A)(5), does not differentiate between murders committed by juveniles tried

as adults and murders committed by adults. The statute simply does not support his position.

Appellant also argues that because his competence to stand trial in his prior murder conviction was called into question, this is further evidence that the prior conviction should not have been used. He relies upon a social worker's report from that time in which it was stated, " * * * due to patient's present mental state and his limited intellectual functioning, one is hard put to believe patient fully comprehends the legal proceedings in which he is immersed."

A report by psychiatrist Dr. Wilfrid Gill prepared three days after the above report found, however, that appellant then understood the charges against him, could cooperate with counsel in preparing his defense, and was aware of courtroom procedure. Gill rendered the opinion that appellant was then legally sane and able to proceed to trial.

Appellant was competent when he entered a plea of guilty to the prior murder and, thus, this proposition is without merit.

## V

Appellant argues in his fifth proposition of law that it would be unconstitutional to execute him because he has an IQ of 64.

We affirmed convictions and death penalties in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, where the defendant had an IQ of 63, and in *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, certiorari granted and judgment vacated on other grounds (1985), 474 U.S. 1002, 106 S.Ct. 518, 88 L.Ed.2d 452, where the defendant had an intelligence level equivalent to that of a child between the ages of ten and twelve years. Although low intelligence is a proper subject for mitigation, R.C. 2929.04(B)(3), there is no rule, statute, or case that holds that a person with an IQ of 64 cannot be executed.

As discussed by the Supreme Court in *Penry v. Lynaugh* (1989), 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256, the execution of mentally retarded persons convicted of capital offenses is not *per se* prohibited by the Eighth Amendment, provided that a jury is given the opportunity to consider such evidence of low IQ as a mitigating factor against the death penalty. Such an opportunity was presented in the penalty phase of this case.

Additionally, the evidence reflects that appellant was in charge of the entire incident. Speights testified that appellant gave orders and initiated the events by first producing a gun and holding it to the head of the victim, Williams. In

addition, there was a report from psychiatrist Dr. Edward Dutton that appellant could function well in a job, in prison, and at home.

Accordingly, this proposition is not well taken.

## VI

In his sixth proposition of law appellant asserts that it was error for the state to cross-examine his expert witness, who testified as to the mitigating factor of R.C. 2929.04(B)(3) ("[w]hether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law"), by using a report that addressed only his competency to stand trial.

John T. Kenny, Ph.D, testified at the mitigation hearing that appellant had "substantial difficulty conforming his conduct in requirements of the law and being aware of the criminality of his act."

Dr. Kenny was cross-examined as to a report prepared by Dr. Dutton who had conducted an examination of appellant to determine whether he was competent to stand trial. Dutton found appellant competent to stand trial. Dutton used information provided by Kenny as part of his report, including a statement by Kenny that appellant was malingering.

Appellant argues that it was improper for the state to utilize a competency report in a mitigation hearing to cross-examine Kenny. A similar question was presented in *State v. Cooey* (1989), 46 Ohio St.3d 20, 33, 544 N.E.2d 895, 912:

" * * * While Cooey's sanity was not at issue, he did raise his alleged mental disorder as a mitigating factor. We cannot accept the proposition that a psychological report on sanity is irrelevant to the existence of a mitigating factor under R.C. 2929.04(B)(3). The issues involved are similar: whether a 'mental disease or defect' existed and, if so, whether and to what degree it may have impaired his cognition and volition. Of course, the issues are not identical, since the mitigating factor requires not a total incapacity but only a lack of 'substantial' capacity. But that does not make the results of the sanity evaluation irrelevant. * * * "

Similarly, we find that the results of a competency evaluation would also be relevant to mitigation.

Appellant argues that this cross-examination was misleading to the jury in that the jury could not know the difference between mental illness and a mental disease or mental defect. The trial court made it clear by asking the witness the following:

"THE COURT: My question was is he suffering from mental disease?

"THE WITNESS: He is not suffering from a major mental illness, but from a mental disease or defect.

"THE COURT: Okay.

"THE WITNESS: Of an organic nature. Is that your question?

"THE COURT: Yes. Thank you."

Additionally, the evidence that appellant was malingering with respect to his mental illness is probative of whether he was malingering with respect to his alleged mental disease or defect.

Thus, this proposition is rejected.

## VII

Appellant asserts in his seventh proposition of law that he was denied a fair trial because the court refused to instruct the jury on the lesser included offense of murder.

In *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus, we held that " * * * [e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."

In the instant case, the eyewitness testimony made it clear that appellant started the robbery by putting a gun to the head of the victim, Williams. It is undisputed that property was taken. Hence, aggravated robbery occurred, forming the basis for the aggravated-murder count. Even if appellant personally did not take the property, there is no question that either he or his accomplices did. The prior-murder specification similarly does not support acquittal, because the evidence presented in regard to it is overwhelming.

Accordingly, this proposition is not well taken.

## VIII

Appellant claims in his eighth proposition of law that he was denied a fair trial by the state's remarks concerning other unproven criminal acts.

This so-called "other-acts" comment by the prosecutor was during closing argument in the guilt phase, as follows:

"MR. HUDSON: * * * He (Evans) already ran 150 miles to get to Columbus. And what was he doing down there? He was snatching purses, according to the officer.

"MR. CARSON: Objection.

"THE COURT: Objection sustained."

After reviewing the remark in the context of the entire case, we find that the statement, although improper, was rendered nugatory by the court's sustaining of the objection to the remark and its subsequent charge to the jury not to consider closing arguments as evidence. Additionally, the record reflects substantial evidence of guilt apart from the remark at issue from which the jury could have convicted the appellant.

Accordingly, this proposition is without merit.

## IX

In his ninth proposition of law, appellant alleges that the trial court erred in finding a seven-year-old competent to testify.

Albert Richards, the seven-year-old son of victim Joann Richards, witnessed the crimes and was found competent to testify.

Albert testified that he recalled what happened at the time of the murders. He testified as to the relationship he had with various people in the apartment at the time. He testified as to the need to tell the truth and that he would get a whipping if he told a lie. After concluding its examination of Albert for competency, the trial court concluded that there was "no reason to think that the young man is not competent to testify. He is certainly able to understand the nature of an oath and also understands what he is testifying about and is able to give present impressions and certainly can testify about what happened."

Albert was determined to be competent by the same judge in the trial of co-defendant Wayne Frazier (*State v. Frazier* [1991], 61 Ohio St.3d 247, 574 N.E.2d 483). In *Frazier,* we reiterated the test that trial judges are to conduct in assessing the competency of youngsters to testify:

" * * * It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's competency to testify. Such determination of competency is within the sound discretion of the trial judge. * * * Thus, the responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them. See *State v. Wilson* (1952), 156 Ohio St. 525, 46 O.O. 437, 103 N.E.2d 552." *Frazier, supra,* 61 Ohio St.3d at 250–251, 574 N.E.2d at 486–487.

Accordingly, Albert's responses do not show an abuse of discretion on the part of the trial court in allowing him to testify. Albert showed that he knew of and understood his duty to tell the truth and the consequences if he did not tell the truth. Thus, this proposition is rejected.

## X

Appellant argues in his tenth proposition of law that he was denied the effective assistance of counsel.

Appellant first alleges that counsel was ineffective during voir dire because he did not ask jurors about their attitude concerning the death penalty. However, during general voir dire, defense counsel asked the entire panel:

"Now, we have talked about the responsibility of this jury having to render a death verdict in this case. We have talked about that.

"Now, the one thing that I want to be sure of, and I want to be absolutely positive of it, is that just because the death penalty is available in this case, you won't automatically vote for it. You wouldn't do that would you?"

It appears that counsel felt it was adequate that the jurors satisfy him that they would not automatically vote for the death penalty.

The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked. The two-prong test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, for assessing ineffective assistance of counsel claims requires a showing that (1) counsel's performance was so deficient that he was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) counsel's errors prejudiced the defendant and deprived him of a trial whose result was reliable. In order to merit reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. * * *" *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. There has been no such showing here.

Appellant complains of issues during the guilt phase that have been covered in other propositions of law and found not to be error. Thus, with respect to those issues, appellant cannot meet the *Strickland* test.

Appellant also claims error in the penalty phase because defense counsel listed all seven of the mitigating factors and only presented three, and failed to object when the trial court listed all these factors in the jury instructions. We have held that even if the trial court lists all seven factors when only a lesser number are present, that is not error as long as there is no further

comment about the factors. *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542. Here, there was no such comment.

Finally, appellant argues his counsel failed to object to the victim-impact statement of the prosecutor. This issue is discussed in Part I, and for the reasons set forth *supra,* need not be discussed further here.

Accordingly, this proposition is not well taken.

## XI

In his eleventh proposition of law, appellant asserts in essence that the court erred in overruling his Crim.R. 29 motion for a directed verdict of acquittal. In particular, appellant attacks the jury's finding of guilt with respect to the aggravated robberies of Williams and Joann Richards, and asserts that conflicts in testimony and the incompetency of Albert Richards mandates a finding that the jury did not have sufficient evidence for its findings.

We find there was sufficient evidence to sustain the court's overruling of the Crim.R. 29 motion. In ruling on such a motion, a court must view the evidence in a light most favorable to the state to determine if reasonable minds could differ as to whether each material element of the crime has been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184.

With respect to the aggravated robbery of Joann Richards, we agree there is a conflict in testimony between Derek Speights and Albert Richards as to who removed the television from the Richards home, and between the testimony of Albert Richards and Michael Frazier as to what was stolen. It is the province of the jury, however, to weigh the credibility of the witnesses and to determine the facts in this case. Clearly, there was sufficient evidence submitted to the jury to justify the conviction for the aggravated robbery of Joann Richards. In terms of appellant's attack upon the competency of Albert Richards's testimony, we have already addressed that issue above, and need not revisit it here in the context of the sufficiency of the evidence.

With respect to the aggravated robbery of Williams, appellant attacks Speights's testimony that he saw appellant take money from Williams's pockets. Appellant argues that Speights could not have seen this because he was lying face down and because Michael Frazier was stabbing him. Appellant again merely attacks the weight and credibility of this eyewitness testimony and, as previously stated, it is the province of the jury to determine what portion of the testimony it wants to believe.

In addition, even had there been no testimony of appellant's actual taking of the property, there is overwhelming evidence that he was an accomplice, if not the leader of the incident. Thus, this proposition is without merit.

## XII

Appellant claims in his twelfth proposition of law that the prosecutor's use of peremptory challenges deprived him of a fair trial.

Appellant argues that the state's use of peremptory challenges to excuse jurors caused the jury to be composed entirely of jurors "who favored execution." He argues that since the jurors could not be excused for cause per *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, 46 O.O.2d 368, that the state is using these challenges to circumvent *Witherspoon*.

The use of peremptory challenges is permitted as long as they do not purposely exclude an identifiable group. In *State v. Esparza* (1988), 39 Ohio St.3d 8, 13, 529 N.E.2d 192, 198, we held that "the Equal Protection Clause forbids the state's use of peremptory challenges to purposely exclude 'any identifiable group in the community which may be the subject of prejudice.' *Swain v. Alabama* (1965), 380 U.S. 202, 205 [85 S.Ct. 824, 827, 13 L.Ed.2d 759, 764], * * * *Batson v. Kentucky* (1986), 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69]. However, the prosecutor is entitled in any given case to a presumption that he 'is using the State's challenges to obtain a fair and impartial jury to try the case before the court,' *Swain, supra*, at 222 [85 S.Ct. at 837, 13 L.Ed.2d at 773] * * *." See, also, *State v. Seiber* (1990), 56 Ohio St.3d 4, 13, 564 N.E.2d 408, 419.

As discussed by the United States Supreme Court in *Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137, jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties are not distinct identifiable groups whose exclusion would violate the requirement that the jury represent a fair cross-section of the community. Therefore, appellant's argument fails since the excluded jurors are not the type of identifiable group referred to in *Batson, supra*. Accordingly, this proposition is not well taken.

## XIII

Appellant argues in his thirteenth proposition of law that the trial court coerced the jurors into imposing the death penalty.

Appellant argues that the trial court's question to the jurors asking whether they could impose the death penalty "upon the defendant" was improper. He

asserts that the court should have asked them if they could impose the death penalty "in this case," as was approved in *State v. Rogers, supra,* 17 Ohio St.3d at 177–178, 17 OBR at 417–418, 478 N.E.2d at 989–990, and *State v. Tyler* (1990), 50 Ohio St.3d 24, 32, 553 N.E.2d 576, 588. Appellant states that the language caused the jury to make an "even more specific and detailed commitment" to impose the death penalty.

There is no practical difference between "in this case" and "upon the defendant." *Rogers, supra,* and *Tyler, supra,* have been substantially complied with. Thus, this proposition is rejected.

## XIV

In his fourteenth proposition of law appellant alleges that his right to counsel was violated when he was arraigned without counsel. Appellant pled not guilty at arraignment. He argues that because he did not have counsel present, his conviction should be reversed.

This court dealt with exactly this situation in *State v. Bonnell* (1991), 61 Ohio St.3d 179, 181–182, 573 N.E.2d 1082, 1085–1086. As in *Bonnell,* " * * * we find that appellant suffered no prejudice in this regard. At his arraignment, appellant pled not guilty, made no incriminating statements, and lost no crucial rights. * * * " *Id.* at 182, 573 N.E.2d at 1086.

Accordingly, this proposition is not well taken.

## XV

Appellant argues in his fifteenth proposition of law that inflammatory and gruesome photographs were admitted, denying him a fair trial.

Appellant argues that several photographs are not relevant. For instance, he states that state's exhibit 15, which shows Williams's ear slashed, was irrelevant because the coroner never attributed the cause of death to an ear wound. This exhibit was admitted without objection; thus, appellant is required to show plain error. *State v. Maurer, supra,* 15 Ohio St.3d at 260, 15 OBR at 397, 473 N.E.2d at 788, fn. 15. The ear slashing shows the nature and circumstances of the crime. The viciousness of the wound to the head shows intent to kill, and is not so gruesome as to be considered inflammatory. With respect to this exhibit, the plain error showing has not been met.

Appellant next attacks state's exhibit 10, which shows the false eye of Williams partially out of its socket. This was also admitted without objection. This photo also shows the intent of the perpetrators and the nature and circumstances of the offense and supports Albert Richards's testimony of the kick to Williams's eye. Furthermore, the coroner testified as to the wounds

shown in the photos; the photos supported and clarified the testimony of the coroner.

The photos were either scene photos or autopsy photos. We find that the admission of each was justified in that they were from different perspectives and gave the jury a total appreciation of the nature and circumstances of the crimes.

The admission of the photos complied with our leading decision regarding the admission of such evidence. Authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues, or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number. *State v. Maurer, supra,* at paragraph seven of the syllabus. See, also, *State v. Morales* (1987), 32 Ohio St.3d 252, 257–258, 513 N.E.2d 267, 273–274. Here, the photographs were neither repetitive nor cumulative in nature. Thus, this proposition of law is rejected.

## XVI

Appellant claims in his sixteenth proposition of law that he was deprived of a fair trial because the trial court admitted photographs of physical evidence as well as the actual evidence.

The photographic evidence consisted of a photograph of a portion of the television, a photograph of a knife, and photographs of the clothing and bodies of Williams and Joann Richards. The physical evidence submitted included the television, the knife, and the clothing worn by the murder victims during the stabbings.

Appellant argues that the evidence was "cumulative and irrelevant." However, the relevance is apparent. The photographs show the evidence as it was found at the scene, or in the case of the photograph of the knife and of the portion of the television, at the location supplied to police by Wayne Frazier. In general, the photos supported the testimony of the eyewitnesses and police officers, and were essential for reconstructing the crime and the subsequent autopsy examinations.

Appellant attempts to show by analogy that this type of evidence is equivalent to cumulative gruesome photographs. He states that this evidence "eradicated the possibility of any reliable guilt determination."

This position is backed by neither law nor effective argument. The photographs and the actual items were relevant and their admission has not been shown to be an abuse of discretion. Thus, this proposition is meritless.

## XVII

In his seventeenth proposition of law appellant asserts that the trial court failed to consider his offered mitigation evidence.

Appellant first attacks the trial court's finding in its independent review that the mitigating factor of R.C. 2929.04(B)(3) ("[w]hether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law") was not established. Dr. Kenny testified that appellant had "substantial difficulty conforming his conduct in requirements of the law and being aware of the criminality of his act."

The trial court considered, but rejected, the opinion of Kenny on the basis of appellant's acts at the time of the crimes. The court found that appellant was the leader of the incidents and had planned the robberies and the murders. This finding in no way reflected a disregard of the offered mitigation evidence. It was simply a conclusion based on the entire nature and circumstances of the crimes.

Appellant also argues that the trial court failed to consider appellant's degree of participation in the crimes, arguing that he was not the principal offender because the jury found that he was not the principal offender as to the felony-murder specifications. The jury did find him guilty of the mass murder specifications, and the trial court found him guilty of the prior-murder specifications. To focus on the finding that he was not the principal offender as to the felony-murder specifications is to distort the judgment as a whole.

A reading of the ten-page opinion shows the trial court *clearly* considered all the offered mitigation evidence, but found that none of the offered mitigation evidence was established. See *State v. Moreland* (1990), 50 Ohio St.3d 58, 67–69, 552 N.E.2d 894, 904–905, and *State v. Steffen* (1987), 31 Ohio St.3d 111, 117, 31 OBR 273, 278, 509 N.E.2d 383, 390. Accordingly, this proposition is not well taken.

## XVIII

Appellant argues in his eighteenth proposition of law that the death sentence imposed was inappropriate and disproportionate.

Appellant attacks the verdict (see Part III), and the use of his prior murder conviction, where he pled guilty at the age of sixteen (see Part IV). He also states that there was sufficient mitigation evidence to save him from the death penalty (see Part XVII). As noted, all these issues have been discussed in other parts of this opinion.

Additionally, our own proportionality review of the sentence below cures any possible error by the trial court in this regard. Accordingly, this proposition is not well taken.

## XIX

Appellant asserts in his nineteenth proposition of law that the trial court erred by instructing the jury on two mitigating factors not raised by appellant. The factors were R.C. 2929.04(B)(1) (whether the victim of the offense induced or facilitated the crime) and R.C. 2929.04(B)(2) (whether it is unlikely that the offense would have been committed but for the fact that the offender was under duress, coercion, or strong provocation).

We held in *State v. DePew, supra,* 38 Ohio St.3d 275, 528 N.E.2d 542, that even where the court instructs the jury on all of the mitigating factors, there is no error where neither the court nor the state otherwise comments on these factors. Here, there were no such comments. Accordingly, this proposition is not well taken.

## XX

Appellant alleges in his twentieth proposition of law that the trial court's comments to the jury diminished the jury's responsibility when it instructed the jury that their verdict was a recommendation.

This language has been permitted many times by this court. See *State v. Steffen, supra,* 31 Ohio St.3d at 113–114, 31 OBR at 275, 509 N.E.2d at 387–388. Thus, this proposition is rejected.

## XXI

In his twenty-first proposition of law appellant states that proportionality review in Ohio is constitutionally flawed.

We upheld this procedure in *State v. Steffen, supra,* 31 Ohio St.3d at 122–124, 31 OBR at 283–284, 509 N.E.2d at 394–395, and appellant has presented no new arguments in this regard. Accordingly, this proposition is not well taken.

## XXII

In his twenty-second proposition of law appellant claims that Ohio's death penalty statute is unconstitutional. We have repeatedly rejected the arguments raised by counsel and have held the death penalty statute constitutional in all respects. See *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293;

*State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568; and *State v. Jenkins, supra,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264.

Accordingly, this proposition is not well taken.

## Independent Review

Pursuant to R.C. 2929.05(A) we now independently determine whether the aggravating circumstances outweigh any mitigating factors that have been established and whether the sentence of death is appropriate.

During the mitigation hearing, appellant, in an unsworn statement, testified that he was first incarcerated for murder when he was sixteen, and served twelve years in prison. In regard to the instant incident, appellant stated that he did not participate in the murders, and that he stabbed Wayne Frazier because he, Frazier, wanted to kill the "little boy." He further stated he would never say what the others did or what he did, even if it meant he was to receive the death penalty.

Appellant's mother testified that appellant is the youngest of five children. Her oldest son was also convicted of murder, but received a college degree while incarcerated, and is now employed assisting others in reentering the workforce after prison. She related that appellant had suffered a fall when he was a child that caused headaches and severe nosebleeds, and she also stated that appellant recently began attending church.

Dr. John T. Kenny, a psychologist, testified that appellant was mildly retarded with an IQ of 64. He further stated on direct examination, in regard to the mitigating factor set forth in R.C. 2929.04(B)(3), that appellant at the time of the offense had "substantial difficulty conforming his conduct in requirements of the law and being aware of the criminality of his act." The language employed by Dr. Kenny is somewhat different from the requirement in the statute that appellant show that he lacked *substantial capacity* to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Indeed, Dr. Kenny's testimony suggests that although appellant is impaired, he did not lack the requisite substantial capacity.

Even if we consider Dr. Kenny's testimony as establishing the mitigating factor of R.C. 2929.04(B)(3), appellant's involvement in an incident resulting in the killing of two people and the attempted killing of another as well as his prior conviction for murder clearly outweigh this sole mitigating factor beyond a reasonable doubt.

After considering other cases involving aggravated murders that were a part of a course of conduct involving a purposeful killing of or attempt to kill two or more persons, and cases where the defendant has been convicted of a prior-murder specification, we find that the sentences of death are appropriate

in this case as they are neither excessive nor disproportionate to the sentence in similar cases. In *State v. Frazier, supra,* 61 Ohio St.3d 247, 574 N.E.2d 483, we upheld the death sentence imposed upon Wayne Frazier for his actions in the same incident. See, also, *State v. Coleman* (1989), 45 Ohio St.3d 298, 544 N.E.2d 622; *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407; *State v. Spirko* (1991), 59 Ohio St.3d 1, 570 N.E.2d 229; and *State v. Mapes, supra,* 19 Ohio St.3d 108, 19 OBR 318, 484 N.E.2d 140.

Accordingly, we affirm appellant's convictions and death sentences. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, STRAUSBAUGH, DOUGLAS and RESNICK, JJ., concur.

WRIGHT, J., concurs in judgment only.

H. BROWN, J., dissents.

DEAN STRAUSBAUGH, J., of the Tenth Appellate District, sitting for HOLMES, J.

HERBERT R. BROWN, J., dissenting. I must respectfully dissent from the opinion of the majority. I believe this record reflects errors that individually might be considered non-prejudicial but which, when considered cumulatively, taint the conviction for aggravated murder and appellant's sentence of death.

What I find most disturbing is the trial court's failure to instruct the jury properly regarding the testimony of an accomplice. A criminal defendant has a right to expect that a trial court will give accurate, complete jury instructions. *State v. Williford* (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279, 1283. The majority, while conceding that the instruction is improper, concludes that the result would have been the same if the jury had been properly instructed. This is speculation. The three eyewitnesses who testified, Frazier, Speights and Richards, disagree on almost all the particulars of the events of that night. Michael Frazier's testimony is most damaging to appellant, and because of his complicity, his motives in so testifying are suspect. I believe it is dangerously speculative to conclude that the jury would have reached the same conclusion if it had accorded this testimony the weight permitted by the proper instruction.

In my opinion the trial court also erred in failing to instruct the jury on the lesser included offense of murder. The majority finds that there is no error because the evidence does not reasonably support an acquittal on aggravated murder as well as a conviction upon the lesser included offense. Again, I cannot agree. Originally the appellant was convicted of aggravated burglary and aggravated robbery. These convictions form the basis for his conviction

of aggravated murder. The appeals court, however, concluded that appellant could not be convicted of both aggravated burglary and aggravated robbery because they were allied crimes of similar import under the analysis required by *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816, 817. The appeals court vacated appellant's aggravated burglary conviction. It also vacated the conviction on the gun specification because there was no proof that the firearm was operable or could be rendered operable during the commission of the crime. See, *e.g., State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932; *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68. Then, however, the court of appeals held that the trial court did not err in denying appellant's motion pursuant to Crim.R. 29 for acquittal on the aggravated robbery charge, because "reasonable minds could reach different conclusions as to whether each material element of aggravated robbery had been proven beyond a reasonable doubt." The trial court, however, instructed the jury that they could not find appellant guilty of aggravated murder *unless* they found him guilty of aggravated robbery and/or aggravated burglary—in other words, that either aggravated robbery or aggravated burglary was an element of aggravated murder. If reasonable minds could differ as to whether an aggravated robbery took place, they could differ as to whether each material element of aggravated murder had been proven beyond a reasonable doubt because a finding of aggravated murder (in this case) is predicated upon the finding of aggravated robbery. " * * * The persuasiveness of the evidence does not control; the instruction must be given if 'under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense * * *.' " *State v. Huertas* (1990), 51 Ohio St.3d 22, 31–32, 553 N.E.2d 1058, 1069, quoting *State v. Wilkins* (1980), 64 Ohio St.2d 382, 388, 18 O.O.3d 528, 532, 415 N.E.2d 303, 308.

Appellant's low IQ also bothers me. Despite the line of cases beginning with *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, in which this court has held that lack of intelligence is not a sufficiently mitigating "mental disease or defect" pursuant to R.C. 2929.04(B)(3), I believe that a level of intelligence as low as the one here should be given considerable weight before a death penalty is imposed.

Last, I find prosecutorial misconduct here. Though standing alone it is not enough to compel reversal, it adds to the concern about the fairness of the capital sentence when it is combined with the other errors. Even without the victim impact evidence recently rendered permissible by the United States Supreme Court holding in *Payne v. Tennessee* (1991), 501 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720, prosecutorial errors remain. For example, the prosecutor commented on the victim of the *prior* murder. This is not proper. More

significantly and despite three sustained objections, the prosecutor persisted in commenting on the possibility of escape, commutation, and pardon if appellant did not receive the death penalty. That argument can be very persuasive to a jury. In *State v. Bedford* (1988), 39 Ohio St.3d 122, 124–125, 529 N.E.2d 913, 916–917, we expressly disapproved this type of argument.

For all these reasons, then, I would reverse the judgment of the court of appeals and remand this case for a new trial.