[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, the state of Ohio, sought and was granted leave pursuant to R.C. 2945.67(A) to appeal the substantive legal ruling of the Ashtabula County Court of Common Pleas which resulted in a judgment of acquittal in favor of appellee, Michael G. Hines. For the reasons that follow, we reverse the substantive legal ruling of the trial court and enter judgment for appellant.[1]
The case arose following a police chase of appellee during the late evening hours of July 18, 1997 in Ashtabula County, Ohio near the Pennsylvania border. Appellee was subsequently indicted in Ohio for one count of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(3), a felony of the fourth degree.[2] This charge is commonly known as fleeing and eluding.
The case proceeded to a jury trial. The evidence established that two deputies from the Ashtabula County Sheriff's Office pursued appellee in a wild chase for several miles on and off of rural country roads along the Ohio/Pennsylvania border. Appellee was driving a Ford Bronco and had a passenger in the Bronco with him. The vast majority of the chase took place on the Ohio side of the border, with only one incident taking place on the Pennsylvania side of the border. As will be explained further in this opinion, the incident in Pennsylvania involved appellee sliding off of the road and into a ditch.
The chase arose when one of the deputies, Deputy Greg Leonhard ("Deputy Leonhard"), witnessed appellee leaving a bowling alley/bar on the Pennsylvania side of the border in a reckless manner, turning up gravel and dust. The vehicle then headed westbound into Ohio, traveling at approximately seventy-five to eighty m.p.h. in a fifty-five m.p.h. zone. Suspecting that appellee was intoxicated, Deputy Leonhard began to follow him, also at a high rate of speed.
When appellee suddenly pulled off onto a country road, Deputy Leonhard believed appellee was trying to elude him. The deputy activated his flashing lights to signal appellee to stop. He did not. Thereafter, a second deputy became involved in the chase, Detective Robert D. O'Keefe ("Detective O'Keefe").
Significant portions of the roads were not paved and were comprised of dirt and gravel. Deputy Leonhard testified that he feared for his safety because appellee's Bronco was causing a great deal of dust and dirt to fly up into the air, thereby seriously impeding the deputy's visibility as he traveled behind appellee. Although Deputy Leonhard could not give an actual estimate of appellee's speed for the majority of the pursuit, Detective O'Keefe estimated that appellee was traveling approximately sixty to sixty-five m.p.h., and that this rate was unsafe for the conditions. Neither deputy testified as to the speed limit on the subject roads.
Deputy Leonhard testified that he thought appellee was going to lose control of the Bronco during one point in the chase where appellee traveled from a paved portion of the road onto a gravel portion of the road. The deputy testified that the Bronco "bounced both ways when it came down," but did not actually go out of control. The deputy estimated that appellee was traveling at approximately thirty-five m.p.h. at that time.
Detective O'Keefe testified that he saw the Bronco go "airborne" later in the chase as the Bronco came over a rise in a hill. Detective O'Keefe also witnessed the Bronco slide off of the road and enter into a ditch; however, only the front wheels of the Bronco actually edged over the side of the ditch. Appellee thereafter re-started the vehicle and pulled away.[3] After doing so, appellee drove for some time in the middle of the road to prevent the deputy from passing him. Due to the visibility problem, the deputies finally gave up the chase. Appellee was apprehended the next day. He conceded to Detective David Dale Gray ("Detective Gray") that he was attempting to elude the deputies because he had consumed four or five beers at the bar and was fearful that he might be convicted for driving under the influence of alcohol.
Although the deputies testified that they saw at least two other vehicles on the subject roads, they conceded that they saw no other vehicles or persons traveling on the roads at the same time they were in direct pursuit behind appellee. Nevertheless, Detective O'Keefe testified that a civilian car was forced to stop at one point to allow the detective to make a turn and commence pursuit of appellee. However, Detective O'Keefe also testified that he witnessed appellee slow down at a stop sign, although appellee did not make a full stop. The deputies were not able to verify appellee's speed through radar. Finally, the passenger did not testify.
After the state rested, appellee moved for a Crim.R. 29 judgment of acquittal. The trial court granted the motion as to the felony element only which alleged that appellee caused asubstantial risk of serious physical harm to persons or property during the chase. Appellee thereafter entered a plea of guilty to the lesser first-degree misdemeanor of fleeing and eluding. He was essentially sentenced to time served and costs.
The state thereafter moved this court for leave to appeal the substantive legal ruling of the trial court which resulted in the judgment of acquittal in appellee's favor on the felony charge. We granted leave to appeal the substantive legal ruling only. SeeState v. Bistricky (1990), 51 Ohio St.3d 157, syllabus.
Appellant asserts one assignment of error:
 "THE TRIAL COURT ERRED IN GRANTING IN PART APPELLEE'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29 AND REMOVING FROM JURY CONSIDERATION THE ELEMENT OF SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM TO PERSONS OR PROPERTY."
In support of its lone assignment of error, appellant argues that the trial court: (1) applied the wrong standard in reviewing a Crim.R. 29 motion; (2) erred in its interpretation of "substantial risk" as it applies to R.C. 2921.331(C)(3); and (3) invaded the province of the jury by considering the weight of the evidence and the credibility of witnesses.
When a defendant challenges the legal sufficiency of the state's evidence, "a [trial] court must view the evidence in a light most favorable to the state to determine if reasonable minds could differ as to whether each material element of the crime has been proven beyond a reasonable doubt." State v. Evans (1991),63 Ohio St.3d 231, 248. If reasonable minds could differ, the trial court must not enter the judgment of acquittal. State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
The appellate court, in reviewing the trial court's actions, must also view the evidence in a light most favorable to the prosecution, to see if any rational trier of fact could have found all essential elements of the crime to be proven beyond a reasonable doubt. State v. Williams (1996), 74 Ohio St.3d 569,576.
In the case at bar, appellant was charged with failing to comply with an order or signal of a police officer, including the felony element contained within R.C. 2921.331(C)(3). The statute reads, in pertinent part:
 "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop.
 "(C) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer. * * * A violation of division (B) of this section is a misdemeanor of the first degree, except that a violation of division (B) of this section is a felony of the fourth degree if the jury or judge as trier of fact finds any one of the following by proof beyond a reasonable doubt:
"* * *
 "(3) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." (Emphasis added.)
A "substantial risk" means "a strong possibility, as contrastedwith a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." (Emphasis added.) R.C. 2901.01(H). Pursuant to R.C. 2901.01(E), "serious physical harm to persons" means any of the following:
 "(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 "(2) Any physical harm which carries a substantial risk of death;
 "(3) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity;
 "(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;
 "(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain."
Pursuant to R.C. 2901.01(F), "serious physical harm to property" means any physical harm to property which does either of the following:
 "(1) Results in substantial loss to the value of the property, or requires a substantial amount of time, effort, or money to repair or replace;
 "(2) Temporarily prevents the use or enjoyment of the property, or substantially interferes with its use or enjoyment for an extended period of time."
Viewing the evidence in the case sub judice in a light most favorable to the state, we believe that a rational trier of fact could have found that the state proved the element of asubstantial risk of serious physical harm to persons or property beyond a reasonable doubt. The state presented sufficient evidence that appellee created a strong possibility of such harm. Thus, we find merit to this assignment.
We find no authority for the proposition that other civilian cars or persons must be specifically threatened by appellee's actions during the pursuit; there was ample evidence that the deputies themselves were in danger. There is no requirement that the deputies must specifically say that they were at risk of serious physical harm when the existing facts created a clear inference of that risk.
We reiterate that the uncontroverted evidence established that there were at least two other cars on the roads traveled by appellee and the deputies during the chase; that Deputy Leonhard testified that appellee was going to lose control of his vehicle; and that Detective O'Keefe stated that he saw appellee's car go airborne as it crested a hill. The foregoing items, coupled with appellee's admissions to Detective Gray that he had been drinking when he saw the deputy's cruiser, and that he tried to get away because he did not want a DUI conviction, provided more than an ample predicate to overcome the motion for acquittal here.
Further, even though the first-degree misdemeanor charge would also envision a defendant who is fleeing and eluding the police officer, here appellee's prolonged flight on and off of dirt country roads caused a variety of problems of control and visibility which placed the pursuing deputies in increasing danger.
Finally, we agree with appellant's arguments that the trial court failed to view the evidence in a light most favorable to the prosecution when it evaluated the Crim.R. 29 motion. When the evidence and the inferences reasonably drawn from that evidence are viewed in a light most favorable to the state, it is apparent that the issue was one for the jury.
In light of the foregoing analysis, appellant's sole assignment of error is well-taken. The judgment of the trial court is reversed, and this court enters judgment for appellant. _____________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J.,
O'NEILL, J., concur.
[1] Principles of double jeopardy prevent a reversal of the judgment itself and a remand for retrial. Further, the subsequent misdemeanor plea remains unaffected.
[2] The record reveals that appellee was also accused of attempted murder for allegedly shooting at one of the deputies following him during this chase. As the alleged shooting took place on the Pennsylvania side of the border, this charge was brought in Pennsylvania.
[3] It was at this point that Detective O'Keefe testified that appellee shot at him with a firearm. However, as that incident is the subject of the Pennsylvania charge, we will not go into further description of the same in the instant case.