This case is an appeal from the Marion County Court of Common Pleas, following a jury verdict finding defendant Charles Jerome Howard guilty of possession of cocaine in violation of R.C. 2925.11(C)(4) and trafficking in cocaine in violation of R.C. 2925.03(C)(4).
Approximately one week prior to August 3, 1998 defendant Howard and two co-defendants Robert Lee Smith and Elmore Woodrow Calvin arrived at Denzil Blanton's apartment in Marion, Ohio. Defendant, Smith and Calvin were all residents of Detroit, Michigan, and according to Blanton's testimony at defendant's trial, defendant gave Blanton cigarettes in exchange for permission to stay at the apartment. Blanton also testified that Smith and Calvin provided him with crack cocaine while they were staying at the apartment. Blanton stated that the three men used his apartment for the week before August 3 to sell crack cocaine to "between 75 and 100" people, and that he personally witnessed defendant selling cocaine on "five or six" separate occasions. Blanton further asserted that he had not given Calvin, Smith or defendant permission to use his apartment to sell cocaine, and that he attempted to get them to leave several times.
On August 3, 1998 members of the local drug task force, including Detective Steve Ross, went to Blanton's apartment based in part on an informant's tip that cocaine sales were occurring on the premises. Detective Ross also had information that three wanted persons (Tommy Cantrell, Christina Belcher, and Denzil Blanton's brother Danny) had been staying at the apartment. After Detective Ross knocked on the door for several minutes, Blanton finally answered the door and immediately stated "They're not here." However, Detective Ross heard noises coming from the upstairs floor of the apartment, and he asked Blanton who was there. Blanton replied that it was a couple of friends from Chicago. Detective Ross then asked Blanton if he could search the apartment for Belcher and Cantrell. Blanton replied, "sure."
The two men walked upstairs accompanied by three other police officers, and Detective Ross and the other officers began to search the apartment. They initially found no one in the apartment, but a further search of the bathroom revealed Smith hiding in a closet. Smith was handcuffed and secured for weapons, but was not placed under arrest. At this point, Blanton began to glance furtively at the ceiling. Detective Ross located a piece of drywall that covered a passageway to the attic, but was unable to move it aside. He then shoved harder on the drywall and it snapped in half, revealing the defendant, who had been seated upon it. The officers ordered the defendant out of the attic. The defendant identified himself as Jerome Dozier, and gave a date of birth indicating that he was a juvenile.
One of the officers asked the defendant and Smith if there was anyone else in the attic or the rest of the apartment, and both replied "no." However, Blanton shook his head affirmatively, apparently to indicate that there was indeed someone else in the apartment. Another officer gave Detective Ross a boost up into the attic, where Ross observed Elmore Calvin laying on the floor. Detective Ross ordered Calvin out of the attic at gunpoint, and then searched the attic area where Calvin was found for contraband and weapons. This search revealed $650 cash, and a white plastic bag. Detective Ross testified that when he picked up the bag, he immediately noticed an odor of marijuana. Inside the bag, Ross found a scale, a small amount of marijuana, two bottles of Inositol, and 58 grams of cocaine. Upon a subsequent and more detailed search of the bathroom, the officers discovered two firearms in the toilet tank, one of them fully loaded.
On August 6, 1998, the Marion County Grand Jury returned a joint indictment against Robert Smith, Elmore Calvin, and defendant Charles Howard. Each was charged with a third degree felony count of possession of cocaine in violation of R.C.2925.11(C)(4) and a fifth degree felony count of trafficking in cocaine in violation of R.C. 2925.03(C)(4). The case was scheduled for a jury trial on November 9, 1998, but Smith and Calvin failed to appear on that date. The court proceeded to try defendant alone, and on November 10, 1998 the jury returned a verdict of guilty on both charges.
On January 14, 1999, the court sentenced defendant to a mandatory term of three years in prison for the possession charge and a concurrent term of one year for the trafficking charge. Defendant now appeals, and asserts six errors with the trial court's judgment.
 I. The trial court committed prejudicial error by permitting the State to introduce, over the objection of defendant, evidence which was not relevant.
Defendant first argues that the trial court allowed improper testimony by two police officers. He first asserts that portions of the direct testimony of Detective Greg Layne should have been excluded. The challenged testimony gives a general description of drug sale activities occurring in Marion County, and asserts that a substantial number of persons arrested in Marion County for selling drugs actually reside in the Detroit area. After testifying that the street value of cocaine in Marion is significantly greater than the street value in Detroit, Detective Layne proceeded to describe the modus operandi of transient drug dealers.
 A: Normally [transient drug dealers] came in, they find somebody that's using crack cocaine, a local citizen, go in, let `em smoke whatever cocaine they want, pay their rent for `em so they've got a place they can set up and start selling.
 Q: And then what do they do after those few days are over?
 A: When they're out of cocaine they go back to Detroit, may come back in three or four days.
Detective Layne also asserted that transient drug dealers tend to travel in groups and carry firearms and cash proceeds of drug transactions. Howard argues that he properly objected to this testimony and that it should have been excluded under Evid.R. 402 as irrelevant. Alternatively, Howard argues that the testimony should have been excluded under Evid.R.403(A) because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice. Howard also argues that the testimony was inadmissible under Evid.R. 404(A)(1) as improper character evidence of the accused.
We first address Howard's claim that Detective Layne's testimony is irrelevant. Evid.R. 401 reads:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Relevancy determinations are best made by the trial judge, who is in a position to analyze the impact of the evidence on the jury. See, e.g., Renfro v. Black (1990), 52 Ohio St.3d 27, 31, rehearing denied 53 Ohio St.3d 710. Moreover, evidentiary rulings based on relevance will not be overturned absent an abuse of discretion. See, e.g., Nielsen v. Meeker (1996), 112 Ohio App.3d 448,450. An abuse of discretion connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id.
Other Ohio courts have permitted police officers to testify that certain unusual behaviors indicate an intent to engage in the sale of drugs. Cf. State v. Bryant (June 2, 1994), Cuyahoga App. No. 65614, unreported, 1994 WL 245690 at *3. Moreover, police officers are generally permitted to testify concerning matters within their experience and observations which may aid the trier of fact in understanding other testimony. See State v. Reynolds
(December 8, 1994), Cuyahoga App. No. 66417, 1994 WL 693476 at *3, citing State v. Jells (1990), 53 Ohio St.3d 22. Here, because there was little direct evidence linking Howard with the sale of the crack cocaine found at the scene, the prosecution introduced Detective Layne's testimony to establish a modus operandi and intent to sell cocaine. We cannot say that the trial court's determination that Detective Layne's testimony is relevant was an abuse of discretion.
Howard has also argued that the testimony should have been excluded because it tended to unfairly prejudice the jury.
 Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *.
Evid.R. 403(A). When considering whether evidence should be excluded under Evid.R. 403(A), trial courts are vested with broad discretion, and appellate courts should not interfere absent a clear abuse of that discretion. See, e.g., State v. Allen (1995),73 Ohio St.3d 626, 633. In the instant case, the testimony was presented in such a way as to aid in the jury's determination of the facts, rather than to improperly inflame or prejudice. Accordingly, we cannot say that the trial court's decision not to exclude Detective Layne's testimony was an abuse of discretion.
Finally, Howard asserts that Detective Layne's testimony was improper character evidence.
 Evidence of a person's character or trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion * * *.
Evid.R. 404(A). Evid.R. 404 prohibits a forbidden inferential pattern, in which a character trait is used to show propensity and to demonstrate therefrom conforming conduct. The policy of the rule is not based on relevance but upon the danger of prejudice. See State v. Smith (1992), 84 Ohio App.3d 647, 660, citing 1 Weissenberger, Ohio Evidence (1993), Sections 404.4 and 404.23. However, Detective Layne's testimony was limited to a general discussion of the general characteristics of how drug dealers operate in Marion County, and did not address Howard's disposition, general traits or propensity to engage in certain conduct. It was therefore not "character evidence" and the trial court's decision not to exclude it under Evid.R. 404 was correct. See State v. Bryant (June 2, 1994), Cuyahoga App. No. 65614, unreported, 1994 WL 245690 at *4.
Howard also challenges a portion of Detective Steve Ross's testimony, based on the same arguments. Detective Ross's testimony describes the differing roles of persons involved in selling drugs, and indicates that a person can be involved in the sale of drugs without actually touching the drug being sold. However, our review of the transcript reveals that defense counsel's objection to this testimony was based solely on the prosecutor's failure to lay a proper foundation for her questions. The trial court sustained this objection, and no substantive objection was made after the foundation was subsequently established. Howard has therefore waived all but plain error as to Detective Ross's testimony. See, e.g., State v. Evans (1992),63 Ohio St.3d 231, 241; Crim.R. 52(B).
The Ohio Supreme Court has cautioned that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Sneed, 63 Ohio St.3d 3, 10, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Therefore, Howard can prevail on a plain error claim only if he can demonstrate that but for the error, "the outcome of the trial clearly would have been otherwise." Evans,63 Ohio St.3d at 241, quoting Long, 53 Ohio St.2d 91, paragraph two of the syllabus.
Because other Ohio courts have determined that evidence of the general modus operandi of drug dealers is admissible, seeState v. Bryant (June 2, 1994), Cuyahoga App. No. 65614, unreported, 1994 WL 245690 at *3, we do not believe that the admission of Detective Ross's testimony constitutes error. However, even if we assume that admission of Detective Ross's testimony was erroneous, Howard has not shown that but for its admission the outcome of his trial would have been different. We therefore reject this argument.
For the foregoing reasons, the first assigned error is overruled.
 II. The trial court erred in failing to grant defendant's motion in limine as concerns the introduction and admissibility into evidence [of] two firearms found at the premises where defendant was arrested.
On October 9, 1998, defendant filed a motion in limine requesting that the trial court preclude the State from putting into evidence any matters related to the two firearms found in Blanton's toilet tank. Defendant argued that the firearms were inadmissible pursuant to Evid.R. 402 and Evid.R. 403(A).[1]
The trial court overruled this motion and permitted the guns and testimony regarding the guns to be received into evidence. On appeal, defendant argues that because there was no evidence presented that defendant possessed the firearms that the trial court should have excluded evidence of the firearms as irrelevant under Evid.R. 402, or alternatively because the prejudicial effect of the evidence substantially outweighed its probative value under Evid.R. 403(A).
Although Denzil Blanton testified that he had never seen defendant with either of the weapons, the State did present testimony that at the time of his arrest defendant was asked whether the apartment contained any weapons, and he replied that it did not. However, he later admitted to Detective Ross that the seized cocaine belong to his co-defendant Elmore Calvin and the weapons belonged to the other co-defendant Robert Lee Smith. Defendant thereby established his prior knowledge of the existence of the weapons.
Defendant argues that weapons are not relevant to establish that he was engaged in the sale of drugs. Cf. State v. Smith
(March 16, 1992), Stark App. No. CA-8715, unreported, 1992 WL 61363 at *3. However, even if we are to accept that argument, the defendant's misrepresentation and subsequent admission are relevant because they tend to prove that he was engaged in a common enterprise with Calvin and Smith, and the weapons are directly relevant to defendant's misrepresentation. Evid.R. 401. The State was therefore entitled to prove that defendant had lied by showing the presence of the weapons. Moreover, we cannot say that the trial court's decision to overrule defendant's motion in limine and allow admission of the weapons was an abuse of the discretion granted under Evid.R. 403. Defendant's second assigned error is accordingly overruled.
 III. The trial court committed prejudicial error in not granting defendant's requested instruction No. 2 properly requested and filed in this cause on October 9, 1998, and reiterated at trial concerning the testimony of an accomplice, Denzil Blanton.
R.C. 2923.03(D) states:
 If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
On October 9, 1998, the defendant filed a proposed jury instruction following R.C. 2923.03(D), contending that it applied to Denzil Blanton. The trial court refused to give the instruction. On appeal, the defendant argues that because the evidence was uncontested that Blanton had acquiesced in the use of his apartment for the sale of cocaine that he was an "accomplice" within the meaning of the term as used in R.C. 2923.03(D). Defendant therefore contends that he was therefore entitled to the instruction.
In State v. Wickline (1990), 50 Ohio St.3d 114, 118, the Supreme Court interpreted R.C. 2923.03(D), and determined that "at the very least, an `accomplice' must be a person indicted for the crime of complicity." Id. Therefore, trial courts are not required to give the requested instruction unless an indicted accomplice testifies at trial against a defendant. See, e.g.,State v. Santine (June 26, 1998), Ashtabula App. No. 97-A-0025, unreported, 1998 WL 552991 at *4 (citing cases). Under this rule defendant was not entitled to the R.C. 2923.03(D) instruction, because Blanton was never indicted for any offense arising from this incident.
Moreover, it is unclear that Blanton's behavior amounted to complicity. "To `aid' is to assist and to "abet" is to incite or encourage. * * * * Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act." Statev. Stepp (1997) 117 Ohio App.3d 561, 568. Here, the evidence clearly established that Blanton had attempted to "scare off " Smith, Calvin and the defendant by telling them that his probation officer was coming over, and that he attempted to get the three men to leave his apartment on more than one occasion. Finally, he assisted the police in locating and arresting all three defendants. While there is no doubt that Blanton acquiesced in the illicit use of his apartment, we cannot say that the trial court's determination that Blanton was not an accomplice was an abuse of discretion. Defendant's third assignment of error is overruled.
 IV. The trial court erred in not granting defendant's motion for mistrial because of the State's improper argument during closing remarks.
 V. The court's verdict of guilty was against the manifest weight of the evidence and without sufficiency of evidence beyond a reasonable doubt for a finding of guilty.
Defendant's fourth assigned error argues that the trial court allowed the State to engage in an improper argument during closing remarks, and defendant's fifth assigned error argues that defendant was convicted upon insufficient evidence and also that his conviction was against the manifest weight of the evidence. For purposes of clarity and brevity, we will address these arguments together.
Defendant first argues that the trial court improperly allowed the prosecutor to argue that the evidence presented was sufficient to constitute aiding and abetting drug possession, because the conduct alleged by the State cannot establish drug possession as a matter of law.
 MS. BURGRAFF: [L]adies and gentlemen, for the possession case, knowingly — clearly the defendant, when he talked to Detective Ross and Detective Layne, that he indicates, "Hey, I know the drugs are here." By his own admission we know that he knows the drugs are there.
 Further, he possessed them by aiding and abetting Calvin, Jr., by saying, "Hey, nobody else is up here." Helps him [Calvin] retain those drugs.
 MR. MATHEWS: Objection, Your Honor. That is improper. It requires an overt act.
 THE COURT: She's within the bounds of argument. Let's go.
 MS. BURGRAFF: He clearly says nobody else is there. The goal in doing that is making sure the drugs don't go nowhere, the cops don't take the drugs. "Therefore we can continue to sell our drugs and make our money."
 Not only does he sit on the attic and try to keep the cops out, he then lies to the Marion Police Department about the fact that nobody else is there. And the only reason to do that, ladies and gentlemen, is to make sure that the drugs stay up there so that they can keep selling `em.
The trial court had previously overruled the defendant's motion in limine to preclude the prosecution from arguing that the conduct described above constitutes aiding and abetting drug possession. The court also overruled the defendant's motion for a mistrial on this basis. Because the defendant's contention that the prosecutor engaged in improper argument rests upon the assumption that the evidence was legally insufficient to establish that defendant aided and abetted Calvin's possession of the drugs, we will turn directly to the question of whether the State presented sufficient evidence to sustain defendant's conviction for cocaine possession.
R.C. 2925.11 reads, in relevant part:
 (A) No person shall knowingly obtain, possess, or use a controlled substance.
* * * *
 (C) Whoever violates division (A) of this section is guilty of one of the following:
* * * *
 (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
* * * *
 (c) If the amount of the drug involved exceeds twenty-five grams but does not exceed one hundred grams of cocaine that is not crack cocaine or exceeds five grams but does not exceed ten grams of crack cocaine, possession of cocaine is a felony of the third degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree.
Because defendant was charged as an aider or abettor, see R.C.2923.03(F), the complicity statute is also relevant:
 No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * * *
Aid or abet another in committing the offense [.]
R.C. 2923.03(A)(2). An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph 2 of the syllabus. To sustain defendant's conviction, the State was required to present evidence that defendant knowingly aided or abetted Elmore Calvin, Jr. in obtaining, possessing or using cocaine in an amount exceeding the minimum described in R.C. 2925.11(C)(4)(c).
Citing State v. Chandler (August 9, 1994), Franklin App. No. 94APA02-172, unreported, 1994 WL 435386, defendant now urges us to hold that his conduct fails to amount to aiding and abetting drug possession as a matter of law. In Chandler, the Tenth District Court of Appeals held that constructive possession of a controlled substance may not be inferred solely by virtue of the fact that an individual has mere access to a controlled substance through ownership or occupation of the premises upon which the controlled substance is found. See also R.C. 2925.01(K).
While we accept Chandler as a correct statement of the law regarding constructive possession of drugs, the evidence in this case establishes that Elmore Calvin had actual possession of the crack cocaine at the time of the defendant's arrest. Because the question now on review is whether defendant's actions constitute "aiding and abetting" Calvin's possession of the drugs, we believe that defendant's citation of Chandler is inapposite. The proper question is whether the defendant's actions in hiding in the attic, obstructing access to the attic, and lying to the police about his identity and the presence of Elmore Calvin in the attic are sufficient to constitute aiding and abetting Calvin's possession of cocaine. We believe that it is unquestionable that defendant's conduct assisted Calvin in his continued possession of the cocaine, and therefore constitutes aiding and abetting cocaine possession. Moreover, it is clear that a rational trier of fact could find that the State has proven the essential elements of cocaine possession beyond a reasonable doubt. Accordingly, as to the charge of possession of cocaine, the State presented sufficient evidence to sustain defendant's conviction. For the same reasons, the prosecutor's argument that defendant's conduct constituted aiding and abetting was proper as well.
As to the trafficking charge, the State was required to prove that the defendant knowingly or purposefully sold or offered to sell cocaine or a substance containing cocaine. See R.C.2925.03(C)(4)(a). Denzil Blanton testified at trial that he witnessed the defendant sell crack cocaine from the apartment "probably about five or six times" during the period described in the indictment. Therefore, the State has also presented sufficient evidence to sustain the trafficking conviction under the Jenks standard.
Defendant's fifth assignment of error also argues that his conviction on both charges was against the manifest weight of the evidence. The standard to apply when reviewing such a claim as been set forth as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Martin (1983), 20 Ohio App.3d 172, 175; State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Courts of appeals reversing the judgment of a trial court on the basis that the verdict is against the weight of the evidence act as a `thirteenth juror' who rejects the factfinder's resolution of the conflicting testimony. Id. at 387, citing Tibbs v. Florida (1982),457 U.S. 31, 42. Reversal of the judgment of a jury trial on the weight of the evidence requires a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required.Thompkins, 78 Ohio St.3d at 389. Furthermore, appellate courts reverse on the ground of manifest weight only in exceptional cases "where the evidence weighs heavily against the conviction." Id.
This is not such a case. A complete review of the record here does not lead this court to conclude that the jury clearly lost its way in rendering a guilty verdict. We therefore reject defendant's manifest weight claim. Defendant's fourth and fifth assignments of error are overruled.
 VI. Upon a full review of the trial court's transcript and record, it is clear that defendant was denied a fair trial and due process of law because of numerous errors in this cause.
Finally, defendant argues that the cumulative prejudicial effect of the errors alleged in the preceding five assignments denied him a fair trial. See, e.g., State v. DeMarco (1987),31 Ohio St.3d 191, paragraph two of the syllabus.
 [A] conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. The doctrine is not applicable to the case at bar as we do not find multiple instances of harmless error.
State v. Garner (1995), 74 Ohio St.3d 49, 64 (emphasis added). Defendant's argument is misplaced, because the cumulative prejudice doctrine may only be invoked when there are multiple instances of error determined to be harmless. See id. In this instant case, each of defendant's five previous assigned errors was overruled on its merits. Because this case does not present numerous instances of harmless error, defendant's sixth assignment of error is overruled. Id.
For the foregoing reasons, defendant's six assigned errors are overruled and the judgment of the Common Pleas Court of Marion County is affirmed.
 Judgment affirmed.
HADLEY and WALTERS, JJ., concur.
[1] Defendant also argued that the firearms should have been excluded under Evid.R. 405(B). However, because defendant's character is not an essential element of the charges at issue, Evid.R. 405(B) has no application to this case. Character may generally be proven by means of reputation and opinion testimony; however, only where character constitutes element of charge, claim, or defense may it be proven by means of specific acts of conduct. See, e.g, State v. Baker (1993)88 Ohio App.3d 204, 209.