OPINION
Defendant-appellant, Steven Weber, appeals his conviction in the Warren County Court of Common Pleas for felonious assault.
On the night of August 28, 1999, Weber, Amanda Sizemore, and Angel Dotson went to Silver Bar in Franklin, Warren County, Ohio, to drink and celebrate the birthday of Govan Fox. Fox was a friend of Dotson's. While at the Silver Bar, Weber, Sizemore, and Dotson met Fox and Charles Hill. This was the first time that Weber and Hill met one another. After a couple of hours of drinking, the five decided to go to another bar. Weber, Dotson, and Fox left in Dotson's car, a maroon Chevrolet Beretta. Sizemore and Hill left in Hill's car.
The group went to Tyler's bar, located near the corner of Main Street and Sixth Street in Franklin, Ohio, where they continued to drink. At about 2:00 a.m., now August 29, 1999, Hill and Sizemore went outside to the parking lot. There is some dispute as to what occurred outside. Hill stated that Sizemore was "coming on" to him; Sizemore says Hill made advances toward her. In any case, at some point Sizemore pulled Weber's work hammer from out of Dotson's Beretta and hit Hill with it. Hill fell unconscious onto the trunk of his car.
While this was going on, Weber became involved in an argument inside the bar with the barmaid, who allegedly refused to give him change for a drink. The argument escalated until Weber was confronted by other bar patrons. Dotson ran out of the bar. As she exited, she found Sizemore standing just outside the door with the hammer saying, "I got him." Dotson ran to her car to get a tire iron from the trunk. She saw Hill unconscious on the trunk of his car. Dotson then ran back to the bar with the tire iron.
At that time, Weber exited the bar, followed by Fox. Sizemore told Weber that Hill had tried to "start something" with her. Weber went to Hill and pulled him off the car. Dotson got into her Beretta. Although there is some dispute as to what exactly occurred, Hill ended up on the ground unconscious. Fox and Kirk Lawson, who lived across the street, watched as Weber repeatedly hit and kicked Hill. Fox also saw Sizemore hit Hill with the hammer. Weber's attack upon Hill lasted for up to five minutes. When Fox attempted to stop the assault, Weber shoved him away.
Weber, Sizemore, and Fox then got into the Beretta. Because Hill was lying behind the Beretta, they could not back up. Weber got out and moved Hill, hitting him again. He returned to the Beretta and the group drove away. Fox was dropped off a few blocks away at another bar where he called emergency services. During this time, Jimmy Dean Milligan and Brenda Richardson left Tyler's Bar. As they were driving away, they saw the assault and returned to call emergency services. Weber, Sizemore, and Dotson drove to a gas station in Monroe, Ohio.
Officer Robert Cole of the Franklin Police Department ("FPD") was the first to respond. He found Hill lying on the ground with his arms spread. Hill was not moving, and he had prominent knots, bruises, and cuts on his face. There was a pool of blood surrounding Hill's head. Officer Cole radioed for emergency services.
While Officer Cole was evaluating Hill, Sergeant Russ Whitman, also of the FPD, arrived. He first believed that Hill was dead because Hill was immobile and his pupils were fixed and dilated. When Sgt. Whitman saw Hill breathe, he radioed to ready a Care Flight helicopter. Detective Rick Thacker, other officers, and a Warren County Sheriff's Office deputy also arrived at the scene.
Numerous people were interviewed both at the scene and afterward. Emergency services arrived and Hill was flown by Care Flight to the emergency room at Miami Valley Regional Hospital. After Hill was transported, Weber, Sizemore, and Dotson returned. When they arrived, Weber approached Sgt. Whitman, boasting that he had been involved in an altercation and had beat up Hill. Weber asked if the police had found $200 he lost in the parking lot.
Weber was arrested. Sizemore and Dotson were taken to the police station for interviews. Dotson's Beretta was searched, and the hammer and tire iron were seized. At the police station, the police seized Weber's clothes and sandals and Sizemore's shirt, which appeared to have blood on them. The seized items were sent to the Miami Valley Regional Crime Laboratory, where Annette Davis, a forensic scientist, tested them for blood. The clothing items had Hill's blood on them.
Sizemore was interviewed by Det. Thacker, who recorded the interview. Because she was so intoxicated, Sizemore was unclear about what had happened. She said that Hill had come on to her and grabbed her by the hair outside Tyler's Bar. When she told Weber, he began beating Hill.
After Hill was treated in the emergency room, he was evaluated by Dr. Stanley Alexander, a plastic and reconstructive surgeon. Hill's face was bruised with superficial lacerations. There was one significant laceration and extensive facial fractures. At the time Dr. Alexander saw Hill, Hill was still bleeding. Dr. Alexander scheduled Hill for surgery.
The initial reconstructive surgery took over six hours. Hill's jaw and cheekbones were crushed, requiring numerous plates and screws to be inserted to repair them. His lower jaw was wired shut. A plastic plate had to be inserted in the place of his palate and upper teeth. Months later, Hill still required follow-up care, including tooth reconstruction because he had no upper denture after the assault. He still suffers numbness in his face and left hip and leg due to nerve damage, and he now has problems with his left eye.
In Dr. Alexander's estimation, the damage to Hill's face was among the most severe he had seen. He compared it to a severe automobile accident, ranking it as one of his worst three cases. Although some of Hill's injuries were consistent with a blunt force trauma, they could also be caused by a physical assault if he was lying on pavement. Dr. Alexander believed the assault was not just a few hits, but many.
On August 31, 1999, Weber was arraigned in the Franklin Municipal Court on a complaint for felonious assault. Weber requested appointed counsel. A preliminary hearing was scheduled. Counsel filed an appearance on August 31, 1999. Counsel also filed a not guilty plea, waived the speedy trial time requirements of R.C. 2945.71, and requested a pretrial hearing. On September 7, 1999, Weber appeared with counsel and waived the preliminary hearing. The municipal court bound the case over to the grand jury.
On October 19, 1999, Weber was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1), a second-degree felony. Discovery proceeded, and the case was set for a trial on November 22, 1999. On November 19, 1999, the trial court filed an entry continuing the trial until November 29, 1999, because the trial court had previously scheduled a murder trial for November 22, 1999. Weber later filed a motion for a continuance, and the trial court continued the trial until December 8, 1999.
On December 7, 1999, Weber filed a motion to dismiss on speedy trial grounds. He asserted that his waiver of his speedy trial rights was not done knowingly or voluntarily. Based upon this allegation, he asserted that he was not brought to trial within the mandated statutory time. He further argued that if his waiver was proper, it applied only to his preliminary hearing, not to trial. The trial court overruled Weber's motion to dismiss. Upon further motions for continuances, trial was continued until January 18 and February 3, 2000.
At trial, the investigating officers, Annette Davis and Dr. Alexander, testified. Lawson, Milligan, and Richardson testified as eyewitnesses. Dotson and Sizemore testified for the state. Weber testified in his own defense. Sizemore testified that she had been too drunk the night of the attack to remember what happened. The jury found Weber guilty. A sentencing hearing was held, and Weber was ordered to serve a five-year prison term.
After being granted leave, Weber filed a motion for new trial, based upon an affidavit by Sizemore. In her affidavit, Sizemore admitted to hitting Hill with the hammer. She also stated that the assault on Hill began after she told Weber that Hill was coming on to her. The trial court scheduled a hearing on the motion to hear testimony from Sizemore. Defense counsel was unable to procure Sizemore to testify at the hearing.
The trial court denied the motion for a new trial. The trial court found that Sizemore's affidavit only offered testimony she previously denied that she could remember, which the trial court viewed skeptically in light of her admitted intoxication. The trial court further found that the affidavit was cumulative of trial testimony, as witnesses saw Sizemore hit Hill with the hammer. The trial court also found that the affidavit did not alter the substantial testimony that Weber undertook a lengthy physical attack upon Hill. The trial court concluded that the testimony offered in the affidavit would not materially affect the outcome of the trial.
Weber appeals. After his appointed appellate counsel filed a brief ("appointed"), Weber sought leave to file a pro se appellate brief ("prose"), which this court granted. We address the issues presented in both briefs.
Appointed and Pro Se Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED ON SPEEDY TRIAL GROUNDS BECAUSE THE STATE FAILED TO SHOW THAT THERE WAS A KNOWING AND VOLUNTARY WAIVER OF THIS RIGHT.
Weber contends that his right to a speedy trial was violated because he was not tried within the time mandate of R.C. 2945.71. He asserts that his waiver of this right was not made knowingly and voluntarily. He argues that his counsel was ineffective in waiving this right.
The statutory speedy trial provisions are coextensive with the speedy trial rights as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution. Statev. King (1994), 70 Ohio St.3d 158, 160, citing State v. O'Brien (1987),34 Ohio St.3d 7. The general mandate for the time in which a felony trial must be held is provided in R.C. 2945.71:
 (C) A person against whom a charge of felony is pending:
* * *
 (2) Shall be brought to trial within two hundred seventy days after the person's arrest.
The right to a speedy trial may be waived, so long as that waiver is knowingly and voluntarily made. King, 70 Ohio St.3d at 160, citingO'Brien, 34 Ohio St.3d 7.
 Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused filed a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time.
 King at paragraph two of the syllabus. A defendant need not personally consent to the waiver of the speedy trial requirements:
 A defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent.
State v. McBreen (1978), 54 Ohio St.2d 315, syllabus, certiorari denied,439 U.S. 914, 99 S.Ct. 287. See, also, State v. Vaugh (1995),106 Ohio App.3d 775, 785-786; State v. Huckaby (M.C. 1997),91 Ohio Misc.2d 16, 22.
In the instant case, Weber's initial trial counsel filed a waiver of the speedy trial time mandate on August 31, 1999. Weber contends this waiver was ineffective because it was made only by his counsel, not by him, and thus it was not made knowingly and voluntarily. Pursuant to the above cases, this argument is without merit.
Weber further contends that this waiver of time by his counsel should not be imputed to him because counsel's waiver demonstrated ineffective assistance. To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, the defendant must show that, as a result of this deficiency, he was prejudiced at trial. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064; State v. Mills (1992), 62 Ohio St.3d 357, 370, rehearing denied, 63 Ohio St.3d 1406, certiorari denied, Mills v. Ohio
(1992), 505 U.S. 1227, 112 S.Ct. 3048. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1997), 522 U.S. 953, 118 S.Ct. 376. Hindsight may not be used to distort the assessment of what was reasonable in light of trial counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516,524-525, certiorari denied, Cook v. Ohio (1994), 510 U.S. 1040,114 S.Ct. 681.
The time waiver was filed by Weber's initial trial counsel on the day of his arraignment. Weber has not demonstrated that this was unreasonable under the circumstances. He was set to go for preliminary hearing and to be bound over to the grand jury. There were numerous witnesses and facts to be investigated in the case. Both his initial counsel and his subsequent counsel showed competency, engaging in discovery and preparing for trial. Furthermore, Weber cannot show any fault or prejudice as his later counsel requested discovery and, as trial neared, continuances, thus extending the time in which trial was to be held. See State v. Benge (Apr. 24, 2000), Butler CA99-05-095, unreported, discretionary appeal not allowed, 90 Ohio St.3d 1406.
We find that the waiver of time in which trial was to be held was proper, and Weber was bound by such waiver. Appointed and pro se
assignments of error No. 1 are overruled.
Pro Se Assignment of Error No. 3:
 THE TRIAL COURT ERRED OR ABUSED ITS DISCRETION IN NOT GRANTING MOTION [sic] 29 DISMISSAL MOTION THAT THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION ON FELONIOUS ASSAULT IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS.
Weber contends that the trial court should have granted the Crim.R. 29 motion for acquittal made at the close of the state's case. He argues that the state failed to prove that it was he who inflicted the hammer blows to Hill's head.
Crim.R. 29 states, in pertinent part:
 (A) Motion for judgment of acquittal. The trial court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
A trial court will not enter a judgment of acquittal under Crim.R. 29(A) for the defendant if reasonable minds could differ as to whether the state has proven every material element of the crime. State v.Evans (1992), 63 Ohio St.3d 231, 248, certiorari denied (1992),506 U.S. 886, 113 S.Ct. 246. When ruling on a Crim.R. 29(A) motion, the trial court must view the evidence in a light most favorable to the state. State v. Fields (1995), 102 Ohio App.3d 284, 288-89. Review of a denial of a motion for acquittal is de novo; thus the trial court will not be reversed unless reasonable minds could only reach the conclusion that the evidence was insufficient to sustain a conviction. State v.Miley (1996), 114 Ohio App.3d 738, 742, leave to appeal denied (1997),77 Ohio St.3d 1584.
Felonious assault is prohibited by R.C. 2903.11:
(A) No person shall knowingly;
 (1) Cause serious physical harm to another or to another's unborn[.]
"Serious physical harm" is defined in R.C. 2901.01(A)(5):
[A]ny of the following:
* * *
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
The trial court gave to the jury an instruction on "serious physical harm" which tracked R.C. 2901.01(A)(5)'s language.
The state presented evidence in support of its argument that Weber knowingly inflicted serious physical harm upon Hill. Although Weber may not have hit Hill with the hammer, he was seen by numerous persons repeatedly hitting Hill with his fists and kicking Hill in the head, even though Hill was unconscious. Dr. Alexander testified that while Hill's injuries could be caused by a few blunt force hits from an object such as a hammer, they could also have been caused by a greater number of hits with a fist when Hill's head was on the pavement.
The severity of Hill's injuries supports a finding that serious physical harm was inflicted. Nearly his entire face has had to be reconstructed. Hill has problems with his eye. He has continued numbness in his face and left hip and leg. He has to undergo further reconstructive surgery. At the end of the assault, his head was surrounded by a pool of his blood.
There was sufficient evidence to find that Weber knowingly inflicted serious physical harm upon Hill. The trial court properly overruled Weber's motion for acquittal. Pro se assignment of error No. 3 is overruled.
Appointed Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT A NEW TRIAL BASED ON AFFIDAVIT OF STATE'S WITNESS AMANDA SIZEMORE.
 Pro Se Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 33 MOTION FOR A NEW TRIAL AND TRIAL COUNSEL WAS INEFFECTIVE IN PRESENTING FACTS AND EVIDENCE REGARDING NEW TRIAL MOTION.
Weber contends that the trial court erred by overruling his motion for a new trial. He asserts that Sizemore's affidavit, as attached to his motion, provided grounds for a new trial. Weber argues that his trial counsel failed to properly characterize Sizemore's affidavit as a newly discovered confession that would have exculpated him in the attack.
Crim.R. 33(A) provides:
 Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
* * *
 (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.
The granting or denial of a motion for a new trial is addressed to the sound discretion of the trial court. State v. Matthews (1998),81 Ohio St.3d 375, 378. Where the motion concerns newly discovered evidence, the defendant must demonstrate
 that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.
State v. Hawkins (1993), 66 Ohio St.3d 339, 350, certiorari denied,510 U.S. 984, 114 S.Ct. 486, quoting State v. Petro (1947),148 Ohio St. 505, syllabus. Where the motion for new trial is based upon the attempted recantation of trial testimony by a witness, the trial court must evaluate the credibility of the recantation. State v. Pirman
(1994), 94 Ohio App.3d 203, 209, appeal dismissed, 70 Ohio St.3d 1426. Because recanted testimony may prove to be inherently unreliable, the trial court should subject it to the utmost scrutiny when determining if it would materially affect the outcome of the case. See State v. Moore
(1994), 99 Ohio App.3d 748, 755; Toledo v. Easterling (1985),26 Ohio App.3d 59, 62.
The trial court specifically found that Sizemore's affidavit was not credible in light of her admitted heavy intoxication. The trial court also found that the affidavit would not have materially affected the outcome of the trial. The trial court noted that Sizemore was only attempting to offer facts which she earlier said she could not remember.
Even if Sizemore's affidavit were taken as true, it would have had little effect in the case. In the affidavit, she stated that Weber attacked Hill to defend her. She claimed to have hit Hill with the hammer, and that Weber never did so. The testimony at trial established that Weber repeatedly hit and kicked Hill with his fists and feet, not with the hammer. Weber and Dotson both stated that Weber attacked Hill after Sizemore told him what had earlier occurred.
Nothing in Sizemore's affidavit, even if true, would have altered the fact that the state proved that Weber undertook a vicious assault upon Hill that left Hill permanently disfigured. In this respect, the affidavit was only cumulative of testimony of other witnesses at trial. That Sizemore took part in the attack does not alleviate Weber's responsibility for inflicting serious injuries.
Sizemore's affidavit did not provide a basis to grant a new trial. The trial court did not abuse its discretion by overruling Weber's motion. Appointed and pro se assignments of error No. 2 are overruled.
Appointed Assignment of Error No. 3:
 THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHICH CLEARLY SHOWED THAT THE SERIOUS INJURIES WERE THE RESULT OF A BLOW FROM A BLUNT INSTRUMENT.
 Pro Se Assignment of Error No. 4:
 THE TRIAL COURT ERRED WHEN IT RULED THAT THE VERDICT WAS NOT AGAINST THE MANIFEST WEIGHT OF EVIDENCE IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS.
Weber contends that his conviction was against the weight of the evidence because he did not inflict the harmful blows with the hammer.
A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997),78 Ohio St.3d 380, 386-87, rehearing/reconsideration denied,79 Ohio St.3d 1451. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 2218. In taking on this role,
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Martin (1983), 20 Ohio App.3d 172, 175. A decision will not be disturbed on appeal as being against the weight of the evidence if reasonable minds could arrive at the conclusion reached by the trier of fact. Fields, 102 Ohio App.3d at 287.
A review of the evidence reveals only that Weber committed a felonious assault upon Hill. While Hill was either unconscious or disoriented, Weber pulled Hill off of the car and onto the pavement, whereupon Weber began a vicious assault. Although Weber claimed that he struck Hill only once or twice in self-defense, every other witness contradicted this testimony. Even if Sizemore hit Hill with the hammer, arguably inflicting the worst of Hill's injuries, that doesn't change the fact that Weber hit and kicked Hill for up to five minutes.
Dr. Alexander's testimony established the severity of Hill's injuries and that they could have been inflicted by an assault such as Weber's attack was described by eyewitnesses. Hill was left with permanent injuries, impaired vision, and numbness. He still undergoes treatment months after the attack. Without question, even if Sizemore was proven to have inflicted the one or two worst blows, it is still unquestioned that Weber's continued attack virtually crushed all of Hill's face.
Weber's conviction for felonious assault was not against the manifest weight of the evidence. Appointed assignment of error No. 3 and pro se
assignment of error No. 4 are overruled.
 _________________________ YOUNG, J.
POWELL, P.J., and VALEN, J., concur.