[Cite as *State v. Terry*, 2021-Ohio-2091.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                          :         APPEAL NO. C-200105
                                                  TRIAL NO. 19CRB-23438
    Plaintiff-Appellee,             :
                                                  *O P I N I O N.*
  vs.                                   :

FERNANDO TERRY,                         :

    Defendant-Appellant.            :


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 23, 2021


*Andrew W. Garth*, Interim City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Keith C. Forman*, Supervising Attorney, for Plaintiff-Appellee,

*Clyde Bennett, II*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Defendant-appellant Fernando Terry appeals his conviction for assault, arguing in a single assignment of error that his trial counsel rendered ineffective assistance. Finding his argument to be without merit, we affirm the trial court's judgment.

*Factual and Procedural Background*

{¶2} Following an altercation with Teninnah Ross, Terry was charged with assault, a first-degree misdemeanor in violation of R.C. 2903.13. At a jury trial, the state presented evidence that Terry accosted Ross, his on-again/off-again girlfriend, in her driveway. Terry claimed he acted in self-defense.

{¶3} In her opening statement, Terry's counsel raised the issue of self-defense, telling the jury that Ross slapped Terry first, and he hit her back in self-defense.

{¶4} Ross testified that she was speaking with her sister on the telephone as she exited from her car onto her driveway, when she saw Terry approaching. Terry accused her of not answering his calls and stated "[y]ou going to do me like this, Juicy [Terry's nickname for Ross]?" Terry then punched Ross in the jaw and began choking her. Ross fell to the ground, scraping her elbow and knees, and screamed for help. Ross's mother exited from the home to help Ross. Fearful he was going to hit her mother, Ross grabbed Terry's legs, causing him to fall over. Ross denied slapping Terry first. Terry subsequently got up and fled from the scene. He later sent Ross messages apologizing for his actions. These messages stated "Morning I would like to apologize for my actions I've always loved u didn't see u in ten days and

lost it don't matter what happens to me without u guest [sic] he the better man true love won't ever die" and "I call to apologize that s [sic] all I can say."

{¶5} Ross testified regarding her relationship history with Terry. She explained that Terry had a history of making threatening statements about hurting anyone else she was with, and testified that Terry had previously told her that "I can do what I need to do and be done before the police gets there," and "even if we're not together, do you think that means that I won't do something if I see you out." Terry continually told Ross that she underestimated him. Ross additionally testified that Terry engaged in stalking behavior and would show up at her home uninvited.

{¶6} Terry testified in his own defense. He explained that he and Ross had plans to meet on the evening of the altercation, and that he had parked outside Ross's home while waiting for her to return. He approached Ross once she arrived home, and she "took an attitude" when he tried to talk to her. According to Terry, Ross did not want to hear what he had to say, and she turned away from him. Terry reached for her, and Ross smacked him in the face. Terry stated that he then hit Ross in the jaw in response. He testified that Ross struck him first and that he only struck her back "in reaction." He said because he used to be a boxer, this was his reaction to being slapped. When asked by his counsel if he believed that Ross would hit him again, he answered "no." According to Terry, after her slap and his hit, the two began to grab at each other and eventually both fell to the ground. The altercation ended when Terry voluntarily left. Terry acknowledged sending messages of apology to Ross and explained that he was apologizing for his actions and for losing his cool.

{¶7} Terry also testified regarding the relationship history between him and Ross. He denied threatening Ross throughout their relationship and denied making the statements that Ross attributed to him during her testimony about his threatening behavior.

{¶8} During closing arguments, Terry's counsel argued that he had acted in self-defense, and the jury was given an instruction on self-defense. The jury returned a verdict finding Terry guilty of assault.

### Ineffective Assistance

{¶9} In his sole assignment of error, Terry argues that he received ineffective assistance from his trial counsel.

{¶10} To prevail on an ineffective-assistance claim, an appellant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). In reviewing defense counsel's performance, we must remain highly deferential. *Strickland* at 689. We must "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. An appellant's demonstration that counsel's performance was deficient does not warrant the reversal of a conviction if counsel's error had no effect on the judgment. *Id.* at 691; *Bradley* at 142. The appellant must affirmatively demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland* at 693-694; *Bradley* at 143.

### *1. Questioning During Voir Dire*

**{¶11}** Terry first argues that defense counsel was ineffective for failing to properly voir dire potential jurors to ensure that the seated jury could be fair and impartial. "[C]ounsel's conduct during voir dire is presumed to be a matter of trial strategy." *State v. Smith*, 2017-Ohio-8558, 99 N.E.3d 1230, ¶ 57 (1st Dist.). "[V]oir dire by defense counsel does not have to take a particular from, nor do specific questions have to be asked." *State v. Johnson*, 2013-Ohio-2719, 994 N.E.2d 896, ¶ 18 (1st Dist.), quoting *State v. Evans,* 63 Ohio St.3d 231, 247, 586 N.E.2d 1042 (1992).

**{¶12}** Terry contends that defense counsel failed to thoroughly question five specific jurors. But two of these jurors were excused by the state during the voir dire process. Terry thus suffered no prejudice from any failure on the part of defense counsel to properly question these two jurors. With respect to juror number seven, Terry argues that defense counsel failed to properly question this juror on his statements that he could not be a good juror and that he worked with the police. Our review of the record reveals that Terry mischaracterizes juror number seven's statements. While juror number seven wrote on the jury questionnaire that he did not think he would be a good juror, he stated during voir dire that he could be a good juror, based on his life experience and common sense. Juror number seven further explained that he had worked with the police on one specific occasion to eradicate a crack house that had "popped up" in his neighborhood. He gave no indication that he was biased in favor of police or the state, and the record does not indicate that juror number seven was unable to be fair and impartial.

{¶13} Terry further argues that defense counsel failed to properly question juror number nine concerning her statements that her sister worked for the Columbus Police Department and that her father abused her mother. But this juror did not state that her sister worked for the Columbus Police Department. Rather, she indicated that her sister-in-law was a forensic scientist who conducted DNA testing for the Columbus Police Department, and that her sister-in-law's job would not interfere with her ability to be a good juror or to be fair to both Terry and the state. As for juror number nine's statements regarding her family history of abuse, she indicated that this family history would not sway her in either direction when attempting to reach a verdict.

{¶14} Terry last challenges defense counsel's failure to engage in a thorough voir dire of juror number ten concerning her statement in her juror questionnaire that she did not think she could be a good juror. A review of the record reveals that juror number ten never stated during voir dire questioning that she could not be a good juror. Rather, when asked about her questionnaire, juror number ten actually stated that "I feel like I would be good. I just don't like judging people, but I'm good at seeing both sides of stuff." She further acknowledged that her discomfort with sitting in judgment of others would not prevent her from finding Terry guilty if the evidence so demonstrated, or from acquitting him if the evidence was insufficient.

{¶15} Following our review of the record, we conclude that defense counsel engaged in a thorough questioning of the potential jurors during voir dire and that her performance was not deficient.

### 2. *Introduction of Allegedly Prejudicial and Irrelevant Testimony*

{¶16} Terry next argues that defense counsel was ineffective for failing to prevent the introduction of prejudicial and irrelevant testimony. He specifically contends that defense counsel failed to object to Ross's statements about Terry hurting her in the past, to past incidents of Terry showing up at Ross's home without an invitation, and to past incidents of Terry stalking Ross.

{¶17} Ross testified that her relationship with Terry had both good points and bad points. The bad points included Terry's aggressiveness, including his threat to hurt anyone else with whom Ross was in a relationship. Ross testified that Terry told her "I can do what I need to do and be done before the police gets there," and "even if we're not together, do you think that means that I won't do something if I see you out." Defense counsel did not object to these statements.

{¶18} Ross additionally testified that Terry showed up at her home uninvited on numerous occasions, and once entered her home without permission. Defense counsel objected when Ross testified that Terry's behavior scared her children, but the trial court overruled the objection. Ross also testified to what she described as "stalking behavior" by Terry, including an incident where he followed her while she was celebrating her birthday on an evening when she had believed him to be out of town. The trial court sustained defense counsel's objection to Ross's testimony that Terry had a gun in his possession during this incident.

{¶19} While defense counsel did not object to all of Ross's testimony, she thoroughly cross-examined Ross regarding her testimony about Terry and his aggressive nature and stalking behaviors. In response to defense counsel's questions, Ross acknowledged that she never reported any of Terry's behavior to law

enforcement. Defense counsel's treatment of Ross's testimony is a matter of trial strategy that we will not second guess. By obtaining Ross's admission that she never reported Terry's behavior, defense counsel established a reasonable inference that Ross was not bothered by Terry's behavior or that Ross had been untruthful and exaggerated Terry's actions.

{¶20} Defense counsel also questioned Terry about his relationship with Ross and about the incidents that Ross testified to, allowing Terry to present the jury with his version of these incidents. We therefore cannot find that defense counsel was deficient in failing to raise objections to the portions of Ross's testimony set forth in Terry's appellate brief.

### 3. Failure to Argue Self-Defense

{¶21} Terry last argues that defense counsel was ineffective for not knowing the elements of self-defense and for not attempting to introduce evidence of self-defense.

{¶22} Contrary to Terry's assertion, the record indicates that defense counsel attempted to elicit testimony from him to establish that he acted in self-defense. Terry testified that he did not hit Ross until after she struck him in the face, and explained that he only hit her in reaction to being hit himself. Defense counsel additionally asked Terry whether he believed that Ross would hit him again. By asking this question, defense counsel was likely attempting to establish the element of self-defense that Terry had reasonable grounds to believe he was in imminent danger of bodily harm. Unfortunately for defense counsel, Terry answered that question in the negative, which did not assist in Terry's self-defense argument, and in fact undercut it.

{¶23} Defense counsel further argued that Terry had acted in self-defense during closing argument, stating:

Now, in self-defense—the judge will tell you—it will be in your instructions, but you have to put yourself in the shoes of the defendant, of Mr. Terry. It's not what you would have done; it's what a person in Mr. Terry's circumstances and his life experiences with [sic] have done. So she smacked him, and in a split reaction he hit her back. He said when he gets hit, he hits back. When you've been hit, especially out of the blue, you don't know what's about to happen next. You don't know what the other person is about to do.

\* \* \*

This incident started when Miss Ross struck Fernando in the face, when she slapped him across the face. He reacted. He hit her back not knowing what was going to happen next. He went to her house based on her invitation earlier that evening and was struck in the face.

\* \* \*

At the end of the day, this was a fight, a fight that Teninnah Ross started when she smacked him in the face. Fernando acted in that self-defense when he was hit. At worse this was a fight that started with her hitting him and became mutual. Therefore, I would ask you to find him not guilty of the assault.

{¶24} We point out that counsel was "stuck" with Terry's answers and made the best argument she could with the testimony given at trial. Had the facts been different, perhaps she could have made a stronger self-defense argument. However,

counsel can only argue from the facts in the record. She could not, for example, have argued as to one of the key elements of self-defense—fear of harm—in light of Terry's testimony that he did not believe Ross would hit him again. As defense counsel both elicited testimony from Terry regarding self-defense and argued self-defense during closing argument, Terry's argument that defense counsel was ineffective for failing to introduce evidence of self-defense is without merit.

{¶25} We hold that Terry did not receive ineffective assistance from his trial counsel. Terry's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**BERGERON** and **HENDON, JJ.,** concur.

SYLVIA SIEVE HENDON, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry on the date of the release of this opinion.